**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
UNITED STATES OF AMERICA,          :

                                     :        21 Cr. 89 (RMB)

        - against -           :

                                     :        **DECISION & ORDER**

LADO MIDDLEBROOKS,            :

                     Defendant.     :
-------------------------------------------------------------x

Having carefully reviewed the record herein, including without limitation **(1)** the Indictment, filed February 10, 2021 [Dkt. No. 5]; **(2)** Defendant's motion to dismiss the Indictment, dated March 17, 2021 ("Def. Mot."), and exhibits [Dkt. Nos. 14, 15]; **(3)** the Government's opposition, dated April 4, 2021 ("Opp."), and exhibit [Dkt. No. 19]; and **(4)** Defendant's reply, dated April 29, 2021 ("Def. Reply"), and exhibit [Dkt. No. 20], **the Court respectfully denies Defendant's motion to dismiss.**[1]

I.      **BACKGROUND**

On February 10, 2021, a grand jury in Manhattan returned a two-count indictment against Defendant Lado Middlebrooks for (1) conspiracy to commit kidnapping and (2) kidnapping. Indictment. Defendant now moves to dismiss the Indictment for denial of his right to a grand jury drawn from a "fair cross-section" of the community, as required by the Sixth Amendment and the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, et seq. (the "JSSA").

**Defendant's Motion to Dismiss**

Defendant's motion to dismiss contends that the grand jury violated the Sixth Amendment because "Black and Latino individuals are significantly underrepresented in the" jury pool from which his grand jury was drawn. Def. Mot. at 6. Defendant argues that "key choices that result in the systematic underrepresentation of jury-eligible Black and Latino New Yorkers" allegedly included: (1) drawing the master jury wheel "exclusively from voter registration rolls"; (2) refilling the master wheel every four

---

[1]    **Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

years instead of every year; (3) removing "inactive voters from the wheel"; and (4) failing "to attempt to reach jurors who do not respond to [juror] questionnaires." <u>Def. Reply</u> at 8–9.

Defendant also contends that "the total exclusion of 'inactive' voters" violates the JSSA and the S.D.N.Y. Jury Plan, and that "individuals who included an alternate mailing address when registering to vote in Putnam County are arbitrarily excluded." <u>Def. Mot.</u> at 14, 16. Defendant relies upon the expert declaration of Jeffrey O'Neal Martin, dated March 6, 2021, and a "slightly more expansive declaration," dated April 9, 2021. <u>Def. Reply</u> at 5 n.3.

On April 4, 2021, the Government filed its opposition brief along with the report of its own expert, Dr. Bernard R. Siskin. The Government disputes that Black and Hispanic individuals were significantly underrepresented in the jury pool. <u>Opp.</u> at 13. The Government also contends in the alternative that Defendant has not demonstrated that any underrepresentation is due to "systematic exclusion" as opposed to "external forces." <u>Id.</u> at 13–14.

At least five S.D.N.Y. courts have already denied motions very similar to Defendant's motion. These thoughtful courts reasoned that **(i)** the Second Circuit Court of Appeals has unequivocally determined that a jury plan's reliance upon voter registration lists is constitutional, and **(ii)** any underrepresentation of Black and Hispanic individuals from the jury pool resulted from external forces and not from systematic exclusion. "[T]he Second Circuit has stated that a jury plan's exclusive reliance on voter registration lists passes Constitutional muster." <u>United States v. Tagliaferro</u>, 19 Cr. 472 (Crotty, J.), 2021 WL 1172502, at *4 (S.D.N.Y. Mar. 29, 2021). And, "the Court cannot charge the [S.D.N.Y.] Jury Plan with a Sixth Amendment violation because of how often people move residences." <u>United States v. Schulte</u>, 17 Cr. 548 (Crotty, J.), 2021 WL 1146094, at *8 (S.D.N.Y. Mar. 24, 2021). <u>See also</u> <u>United States v. Segovia-Landa</u>, 20 Cr. 287 (Oetken, J.), 2021 WL 1966117, at *2 (S.D.N.Y. May 17, 2021); <u>May 17, 2021 Tr.</u> at 28:10–14, <u>United States v. Balde</u>, 20 Cr. 281 (Failla, J.) (S.D.N.Y. May 26, 2021) (oral decision), Dkt. No. 85; <u>Apr. 14, 2021 Tr.</u> at 10:1–6, <u>United States v. Nieves</u>, 19 Cr. 354

(Rakoff, J.) (S.D.N.Y. May 16, 2021) (adopting reasoning in <u>Schulte</u>), Dkt. No. 108; <u>United States v. Allen</u>, 20 Cr. 366 (Román, J.), 2021 WL 431458, at *10 (S.D.N.Y. Feb. 8, 2021).

**The S.D.N.Y. Jury Plan**

Each federal district court must "devise and place into operation a written plan for random selection of grand and petit jurors." 28 U.S.C. § 1863(a). The S.D.N.Y. Jury Plan was adopted in 2009.[2] Under the S.D.N.Y. Jury Plan, prospective jurors are first drawn at random from voter registration lists to create Master Jury Wheels for Manhattan and White Plains. Jury Plan, art. III.A–C. The Master Jury Wheel is "emptied and refilled" every four years. <u>Id.</u>, art. III.B. The Manhattan Master Jury Wheel is at issue here.

"Once or twice each year, or more frequently, if necessary, at times to be determined by the Chief Judge, the Clerk shall draw from the Master Wheels the names and addresses of persons to whom questionnaires will be sent for the purpose of examining their qualifications and availability for jury service." <u>Id.</u>, art. III.D. The S.D.N.Y. Jury Plan bases its qualification criteria on "neutral standards such as the ability to speak English, citizenship and age, mental capacity, and criminal record." <u>Schulte</u> at *2 n.1.

The names of those who return questionnaires and qualify for jury service constitute Qualified Jury Wheels. <u>Id.</u> art. III.D. Names are drawn randomly from the Qualified Jury Wheels to fill jury panels as needed, and summonses for jury service are sent to individuals whose names are so drawn. <u>Id.</u>, art. III.F.

## II.   LEGAL STANDARD

"The Sixth Amendment guarantees a criminal defendant a jury selected from a fair cross section of the community." <u>United States v. Rioux</u>, 97 F.3d 648, 654 (2d Cir. 1996) (citing <u>Taylor v. Louisiana</u>, 419 U.S. 522, 530 (1975)). "This right extends to both petit and grand juries." <u>Allen</u> at *3 (citation omitted).

---

[2]    A copy of the Jury Plan was included as Exhibit A to Defendant's motion, and is also available online at https://www.nysd.uscourts.gov/sites/default/files/pdf/juryplan_feb_2009.pdf.

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show **(1)** that the group alleged to be excluded is a 'distinctive' group in the community; **(2)** that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and **(3)** that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." Duren v. Missouri, 439 U.S. 357, 364 (1979). Each of these three elements must be shown in order to establish a prima facie violation of the fair cross-section requirement. Tagliaferro at *3 n.1 (citing Duren at 364).

Systematic exclusion is "usually the most difficult to establish." United States v. Barlow, 732 F. Supp. 2d 1, 35 (E.D.N.Y. 2010) (citation omitted), aff'd, 479 F. App'x 372 (2d Cir. 2012). "Cases finding systematic exclusion are few and far between." Id. "Under the external forces principle, outside causes of underrepresentation (such as 'demographic changes') do not constitute systematic exclusion." Schulte at *7 (citing Rioux at 658).

A jury plan provision which relies upon voter registration lists is presumed constitutional, and "absent positive evidence that some groups have been hindered in attempting to register to vote, **a jury venire drawn from voter registration lists violates neither the Sixth Amendment's fair cross-section requirement nor the Fifth Amendment's guarantee of Equal Protection**." Schanbarger v. Macy, 77 F.3d 1424 (2d Cir. 1996) (per curiam) (emphasis added).[3]

The JSSA also includes a fair cross-section requirement. 28 U.S.C. § 1861. A "substantial failure to comply" with the JSSA is required to successfully support a challenge. See id. § 1867(a). "Mere 'technical' violations of the procedures prescribed by the [JSSA] do not constitute 'substantial failure to comply.'" United States v. LaChance, 788 F.2d 856, 870 (2d Cir. 1986) (citations omitted).

---

[3] Defendant references the Fifth Amendment in his motion, but presents no explicit Fifth Amendment argument. "[A] Court need not entertain an argument that was not briefed." Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman, 969 F. Supp. 2d 278, 290 (E.D.N.Y. 2013). In any case, absent "intentional discrimination, a jury selection plan does not violate the Equal Protection Clause," and Defendant "presented no evidence whatever of any intentional discrimination." United States v. Miller, 116 F.3d 641, 659 (2d Cir. 1997).

III.    **ANALYSIS**

**The Jury Plan Is Constitutional**

The Jury Plan and Defendant's grand jury are upheld as constitutional for substantially the same reasons set forth by the other S.D.N.Y. judges cited on pages 2–3, above. The S.D.N.Y. Jury Plan appropriately relies upon voter registration rolls. See Schulte at *8. And, Defendant fails to show that Black and Hispanic individuals were underrepresented due to any "systematic exclusion." See, e.g., Tagliaferro at *4–5; Allen at *9. The Court rejects Defendant's Sixth Amendment claim.

With respect to the Duren test, Defendant has not shown any systematic exclusion. While the parties agree that Black and Hispanic individuals are "distinctive" groups, see Rioux at 654, that is not nearly enough. Defendant has not shown the systematic exclusion factor, which is required. The Court does not need to evaluate the second Duren factor of underrepresentation. See Tagliaferro at *3 n.1. Defendant's fair cross-section challenge must be rejected.

Defendant also claims that he has established systematic exclusion because his data shows a "10-year pattern of increasing underrepresentation of Latino individuals in the qualified jury wheel." Def. Mot. at 10. Defendant "conflates Duren's underrepresentation element" with "systematic exclusion." Tagliaferro at *3 (citing Rioux at 658). "To demonstrate systematic exclusion, the Defendant must isolate specific flaws in the Jury Plan and then prove that those flaws are what caused the underrepresentation at issue." Id. Defendant fails to do this.

Defendant's argument that four "key choices" result in the systematic exclusion of jury-eligible Black and Hispanic individuals from the jury pool is not at all persuasive. For one thing, Defendant's contention that the Jury Plan is unconstitutional because it draws "exclusively from voter registration rolls, which underrepresent the number of jury-eligible Black and Latino New Yorkers," Def. Reply at 8, disregards clear legal precedent. The Second Circuit unequivocally has held that "a jury venire drawn from voter registration lists violates **neither** the Sixth Amendment's fair cross-section requirement nor the Fifth Amendment's guarantee of Equal protection." Schanbarger at 1424 (emphasis added).

Second, Defendant's contention that, because the S.D.N.Y. "refills its master wheel every four years," this "arbitrarily removes jury-eligible 18-21 years olds" and "elevates those with stable housing over those without it," Def. Reply at 8, similarly ignores established case law. Defendant fails to recognize that changes of address and other demographic changes are factors that the Second Circuit has termed "external" and not "systematic." See Rioux at 658. "[T]he cause of the exclusion (e.g. people moving) is an external force, not an inherent flaw within the Jury Plan." Tagliaferro at *4.

Third, Defendant's contention that the exclusion of inactive voters—i.e. registered voters whom the county elections board believes have moved—unlawfully "impacts Black and Latino individuals," Def. Reply at 9, is also unavailing. Here again, the cause of exclusion is people moving, which courts have held "is an external force." Schulte at *8. It is not systematic.

Fourth, Defendant's contention that "the jury administrator fails to attempt to reach jurors who do not respond to their questionnaires" and therefore negatively affects Black and Hispanic people, Def. Reply at 9, is not persuasive. "The inability to serve juror questionnaires because they were returned as undeliverable is not due to the system itself, but to outside forces, such as demographic changes." Rioux at 658.

**There Is No "Substantial Failure to Comply" with the JSSA**

Defendant argues unpersuasively that the Jury Plan and the grand jury violate the JSSA's fair cross-section requirement. This claim fails because, as shown on pages 5–6 above, the Sixth Amendment claim is rejected and "the JSSA analysis for this type of claim mirrors the Sixth Amendment analysis." Allen at *10.

The Court also rejects Defendant's remaining JSSA claims regarding inactive voters and Putnam County voters with alternate mailing addresses, because these do not rise to the level of "substantial" violations. See LaChance at 870. "A substantial violation of the [JSSA] occurs only when the alleged violation frustrates the [JSSA's] principles of random selection and objective determination of juror

disqualification, exemptions and excuses." United States v. Rioux, 930 F. Supp. 1558, 1580–81 (D. Conn. 1995), aff'd, 97 F.3d 648 (2d Cir. 1996). Defendant fails to make any such showing here.

As to inactive voters, "[i]t is entirely logical for a jury selection process to exclude individuals who have since moved." Allen at *10. And, "even if the exclusion of inactive voters is a violation of the JSSA, it is certainly a technical violation." Id.

As to the alternate mailing addresses of some voters from Putnam County, it is clear that "[t]he clerical issue involving improperly transcribing alternate addresses of individuals to the master wheel is a technical violation of the JSSA." Id. at *11. Moreover, "[i]t is undisputed that the alternate mailing address defect actually led to an **increase** of representation of the very minority groups that [Defendant] contends were underrepresented . . . Thus empiricism precludes the notion that the violation was 'substantial' in nature." Schulte at *10 (citations omitted).

## IV.   CONCLUSION & ORDER

For the reasons stated above, Defendant's motion to dismiss [Dkt. No. 14] is respectfully denied.


Dated: New York, New York
      June 10, 2021

*Richard M. Berman*

**RICHARD M. BERMAN, U.S.D.J.**